IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET A. HEAGY, | : | DOCKET NO.: |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| MILTON HERSHEY SCHOOL, | : | CIVIL ACTION |
| Defendant | : | JURY TRIAL DEMANDED |
| | : | |

## COMPLAINT

Now comes Plaintiff, Margaret A. Heagy, by and through her counsel, Reilly Wolfson, and hereby files this Complaint alleging violations of the Family Medical Leave Act of 1993, 29 U.S.C.A. § 2601, et seq., amended 2009, the American's With Disabilities Act, 42 U.S.C. § 12101, and the Pennsylvania Human Relations Act, 43 P.S. § 954 arising out of her employment with Milton Hershey School:

## JURISDICTION AND VENUE

1. Jurisdiction is appropriate in this Court under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper because all parties reside or do business in this District, and all unlawful employment practices complained of occurred in this District.

3. Plaintiff filed a Complaint with the PHRC, which was dually filed with EEOC, and exhausted her administrative remedies. A Notice of Rights was issued on August 17, 2015, and is attached hereto as Exhibit A.

1

## PARTIES

4. Plaintiff, Margaret A. Heagy ("Ms. Heagy"), is an adult individual residing at 1518 King Street, Lebanon, PA 17042.

5. Defendant, Milton Hershey School ("MHS"), is a non-profit Pennsylvania corporation with a principal place of business at 801 Spartan Lane, Hershey, PA 17033.

6. MHS employed 4 or more employees in the current and preceding calendar years.

7. MHS hired Ms. Heagy in August 2001 as a Senior Administrative Secretary in the Psychology Department. Subsequently, she maintained roles as Senior Administrative Secretary and Administrative Assistant dependent on the position of her direct supervisor

8. In 1994, Ms. Heagy was diagnosed with fibromyalgia, a serious medical condition.

9. MHS was aware of Ms. Heagy's serious medical condition.

10. As a result of her medical condition, Ms. Heagy's medical providers provided MHS with the appropriate medical certifications for intermittent medical leave under the Family Medical Leave Act ("FMLA").

11.    Throughout her employment with MHS, Ms. Heagy took and has taken approved intermittent leave due to her disability of fibromyalgia, as necessary.

12.    In July, 2008, Ms. Heagy moved from the Psychology Department to the Finance Department, maintaining a position as a Senior Administrative Assistant.

13.    Ms. Heagy was subsequently promoted to Administrative Assistant.

14.    In her position in the Finance Department, Ms. Heagy worked for and reported to the Senior Director, Finance.

15.    Until January 2012, Al Carbonara ("Mr. Carbonara") served as the Senior Director, Finance, at which point he retired.

16.    Upon Mr. Carbonara's retirement, Stephen Valentine ("Mr. Valentine") assumed the role of Acting Senior Director, Finance, eventually becoming Senior Director, Finance, in September 2013.

17.    On or about September 30, 2013, MHS informed Ms. Heagy that it would eliminate her position effective Friday, October 4, 2013.

18.    Contemporaneously with informing Ms. Heagy of its elimination of her position, MHS offered Ms. Heagy a severance package.

19.    MHS also contemporaneously offered Ms. Heagy the position of Customer Service Representative in the Support Services Department, with the

3

position to be effective Monday, October 7, 2013. Her title was renamed Central Monitor Operator. The Support Service Department was newly titled Campus Services Department.

20.    From January 2012 through Friday, October 4, 2013, Ms. Heagy worked directly for and reported to Mr. Valentine.

21.    As of Friday, October 4, 2013, in her position as the Senior Administrative Secretary, Ms. Heagy had an hourly rate of pay of $24.81, or $51,604.80 per year, at Grade 16, and worked the hours of 7:00 a.m. through 4:30 p.m., Monday through Friday.

22.    Ms. Heagy, faced with the option of either being terminated or demoted, accepted the position of Customer Service Representative in the Support Services Department, and began this demoted position on October 7, 2013. The Position of Customer Service Representative was retitled Central Monitoring Operator in the Campus Services Department.

23.    Ms. Heagy remains in the position of Central Monitoring Operator in the Campus Services Department and remains employed by MHS through the present.

24.    In the position of Customer Service Representative, Ms. Heagy initially worked 2:45 p.m. to 11:15 p.m., Tuesday through Saturday.

4

25. Upon reporting to her new position of Customer Service Representative on Monday, October 7, 2013, Ms. Heagy was informed that her hourly rate of pay would be $21.00 at Grade 15.

26. Ms. Heagy immediately contacted Joan Singleton, Vice President of Human Resources, to discuss this decrease in her rate of pay.

27. Ms. Singleton, at that time, informed Ms. Heagy that MHS had terminated her and was "good enough to offer her another job."

28. To date, Ms. Heagy continues to make a lower hourly rate of pay than she did in her previous position prior to her demotion.

29. MHS maintains an internal Policy regarding demotions, Policy 3.34, which defines a "demotion" as "the transfer of an employee to a position having decreased duties and responsibilities, and a lower pay grade than the position which the employee previously held."

30. The Policy further defines an "involuntary demotion (reduction of force)" as a situation in which an "employee is involuntarily assigned a lower grade position, because the employee's previous position has been eliminated through a reduction-in-force (through no fault of the employee)."

31. Policy 3.34 provides that when an employee is involuntarily demoted, an immediate reduction in pay may result that is the lesser of the following: (1) 5%; or percentage reduction necessary to reduce to the maximum range value of

the lower grade. If the employees' previous salary or wage was less than the maximum range value of the lower grade, no reduction is to be applied.

32. Under this Policy, Ms. Heagy's transfer from Senior Administrative Assistant to Customer Support Representative constituted an involuntary demotion to which Policy 3.34 should have been applied by MHS.

33. Upon learning of her decrease in salary, Ms. Heagy also addressed Policy 3.34 with Ms. Singleton, with Ms. Singleton responding that Policy 3.34 did not apply to Ms. Heagy.

34. In numerous other instances, including instances contemporaneous to Ms. Heagy's demotion, however, MHS eliminated the positions of non-disabled individuals, placed these individuals in positions of a lower grade and did not decrease their salaries, in line with the dictates of Policy 3.34.

35. Additionally, upon the elimination of her position as Administrative Assistant, her responsibilities and duties were subsumed by other, non-disabled individuals, including:

    a. Sharon Hurst;
    b. Ann Horst;
    c. Kirstin Shultz; and
    d. Benita Gilreath

36. Further, after being demoted to Customer Service Representative at a lower grade and reduced rate of pay, MHS required Ms. Heagy to submit to a medical examination by a physician in York who was selected by MHS.

6

37.   This MHS chosen physician agreed with the prognosis of Ms. Heagy's treating physician, Dr. Stuart Hartman, that she required intermittent leave for her fibromyalgia.

38.   Despite this independent verification of her serious medical condition and the necessity of intermittent leave, MHS required Ms. Heagy to submit to a third medical examination by a physician in Reading selected by MHS.

39.   This physician agreed with Ms. Heagy's treating physician and the physician in York.

40.   Eventually, after waiting approximately six (6) months, MHS advertised Ms. Heagy's former position under the new title of "Payroll Processor," on May 14, 2014.

41.   Ms. Heagy previously performed all job functions that the position of "Payroll Processor" performs in her prior eliminated position as Administrative Assistant.

42.   Aside from the requirement that an individual possess a four year degree, Ms. Heagy is qualified for the position of "Payroll Processor."

43.   Ms. Heagy has never been disciplined throughout her employment with MHS.

## COUNT I –
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. §951, ET SEQ.

44.   Paragraphs 1 through 43 of the Complaint are incorporated by referenced as though fully set forth herein.

45.   Ms. Heagy is and, at all relevant times, was an employee of MHS as the term is defined by the Pennsylvania Human Relations Act ("PHRA").

46.   MHS employs four or more persons within the Commonwealth of Pennsylvania and is an employer as defined by the PHRA.

47.   Ms. Heagy was qualified to perform the essential duties of her position with MHS, with or without a reasonable accommodation.

48.   Ms. Heagy is a qualified individual with a disability in that she suffers from a disability (fibromyalgia), and MHS was aware of her disability and perceived Ms. Heagy as suffering from a disability.

49.   MHS discriminated against Ms. Heagy based upon her disability or perceived disability by: (a) forcing Ms. Heagy to assume a demoted position; (b) forcing Ms. Heagy to assume a position at a decreased rate of pay and with less desirable shifts; (c) failing to properly and uniformly apply Policy 3.34 to her involuntary demotion; (d) failing to hire her to the position of "Payroll Processor" for which she was qualified; (e) delegating her duties as Administrative Assistant to non-disabled individuals; (f) hiring a non-disabled individual in the position of

8

"Payroll Processor" over Ms. Heagy; and (g) eliminating Ms. Heagy's position as Administrative Assistant.

50. It is believed that MHS subjected Ms. Heagy to multiple physical examinations in an attempt to further harass and discriminate against her due to her known disability.

51. Ms. Heagy's disability or perceived disability was not job related.

52. Ms. Heagy's use of intermittent FMLA leave was a reasonable accommodation for her disability.

53. MHS permitted and allowed the discriminatory behavior of its employees, supervisors, and administrators against Ms. Heagy.

54. Ms. Heagy was discriminated against on the basis of her disability and in violation of the PHRA.

55. MHS knew or should have known that it was not applying its policies properly and uniformly thereby subjecting Heagy to discrimination based upon her disability.

56. As a direct and/or proximate result of the above described discriminatory actions by MHS, Ms. Heagy suffered financial injury, including but not limited to loss of past earnings and/or future loss of earnings.

57. As a direct and proximate result of the above described discriminatory actions of MHS, Ms. Heagy suffered emotional and mental injuries, including but

not limited to past and present pain and suffering, humiliation, depression, anxiety and embarrassment.

58.    As a direct and/or proximate result of the above described discriminatory conduct of MHS, Heagy suffered professional injuries, including but not limited to harm to her professional reputation, professional development, loss of increase in salary, and loss of potential promotions.

## COUNT II – AMERICAN'S WITH DISABILITIES ACT

59.    Paragraphs 1 through 58 of the Complaint are incorporated by reference as though fully set forth herein.

60.    Ms. Heagy was an employee with a disability as the term is defined by the American's with Disabilities Act ("ADA").

61.    MHS employs 15 or more persons and is an employer under the ADA.

62.    Ms. Heagy is a qualified individual with a disability in that Ms. Heagy suffers from a disability (fibromyalgia), and MHS knew of her disability and/or perceived Ms. Heagy as suffering from a disability.

63.    MHS discriminated against Ms. Heagy based upon her disability or perceived disability by: (a) forcing Ms. Heagy to assume a demoted position; (b) forcing Ms. Heagy to assume a position at a decreased rate of pay and with less desirable shifts; (c) failing to properly and uniformly apply Policy 3.34 to her involuntary demotion; (d) failing to hire her to the position of "Payroll Processor"

for which she was qualified; (e) delegating her duties as Administrative Assistant to non-disabled individuals; (f) hiring a non-disabled individual in the position of "Payroll Processor" over Ms. Heagy; and (g) eliminating Ms. Heagy's position as Administrative Assistant.

64. It is believed that MHS subjected Ms. Heagy to multiple physical examinations in an attempt to further harass and discriminate against her due to her known disability.

65. Ms. Heagy's disability or perceived disability was not job related.

66. Ms. Heagy's use of intermittent FMLA leave was a reasonable accommodation.

67. MHS permitted and allowed the discriminatory behavior of its employees, supervisors, and administrators against Ms. Heagy.

68. Ms. Heagy was discriminated against on the basis of her disability and in violation of the ADA.

69. MHS knew or should have known that it was not applying its policies properly thereby subjecting Ms. Heagy to discrimination based upon her disability.

70. As a direct and/or proximate result of the above described discriminatory actions by MHS, Ms. Heagy suffered financial injury, including but not limited to loss of past earnings and future loss of earnings.

71. As a direct and/or proximate result of the above described discriminatory actions of MHS, Ms. Heagy suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, depression, anxiety and embarrassment.

72. As a direct and/or proximate result of the above described discriminatory conduct of MHS, Ms. Heagy suffered professional injuries, including but not limited to harm to her professional reputation, professional development, loss of increase in salary, and loss of potential promotions.

## COUNT III – VIOLATION OF FAMILY MEDICAL LEAVE ACT

73. Paragraphs 1 through 72 of the Complaint are incorporated by reference as though fully set forth herein.

74. Ms. Heagy was employed by MHS for at least 12 months during the 12 month period immediately preceding the commencement of intermittent FMLA leave.

75. Ms. Heagy worked at least 1,250 hours during the 12 month period immediately preceding the commencement of intermittent FMLA leave.

76. MHS employed 50 or more employees during the requisite period of time.

77. Ms. Heagy was entitled to 12 weeks of unpaid leave per year for her own serious health condition.

78. Ms. Heagy suffers from a serious health condition (fibromyalgia), and MHS knew of her disability and/or perceived Heagy as suffering from a disability.

79. Ms. Heagy was and is entitled to take her 12 weeks of FMLA leave intermittently.

80. Ms. Heagy's treating physician provided the requisite documentation and medical certification to MHS.

81. MHS accepted Ms. Heagy's FMLA leave request as outlined by her treating physician.

82. MHS retaliated against Ms. Heagy for Ms. Heagy's lawful taking of approved intermittent leave for her serious medical condition by: (a) forcing Ms. Heagy to assume a demoted position; (b) forcing Ms. Heagy to assume a position at a decreased rate of pay and with less desirable shifts; (c) failing to properly apply Policy 3.34 to her involuntary demotion; (d) failing to hire her to the position of "Payroll Processor" for which she was qualified; (e) delegating her duties as Administrative Assistant to non-disabled individuals; (f) hiring a non-disabled individual in the position of "Payroll Processor" over Ms. Heagy; and (g) eliminating Ms. Heagy's position as Administrative Assistant.

83. As a direct and/or proximate result of the above described actions by MHS, Ms. Heagy suffered financial injury, including but not limited to loss of past earnings and future loss of earnings.

84.    As a direct and/or proximate result of the above described actions of MHS, Ms. Heagy suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, depression, anxiety and embarrassment.

85.    As a direct and/or proximate result of the above described conduct of MHS, Ms. Heagy suffered professional injuries, including but not limited to her professional reputation, professional development, loss of increase in salary, and loss of potential promotions.

## COUNT IV – PUNITIVE DAMAGES

86.    Paragraphs 1 through 85 of the Complaint are incorporated by reference as though fully set forth herein.

87.    MHS's conduct as set forth above constitutes egregious, outrageous and wanton conduct.

88.    MHS's conduct as set forth above was intentional and willful.

## COUNT V – WAGE PAYMENT AND COLLECTIONS LAW

89.    Paragraphs 1 through 88 of the Complaint are incorporated by reference as though fully set forth herein.

90.    MHS agreed to pay Ms. Heagy $21.00 per hour for her work performed in her current position.

91.   MHS, however, does not compensate Ms. Heagy at a rate of $21.000 per hour.

92.   Instead, MHS compensates Ms. Heagy at a rate of $20.9962 per hour.

93.   Since October 7, 2013, and through the present, MHS has been compensating Ms. Heagy at a rate of pay lower than the rate at which it agreed to compensate her.

94.   MHS's failure to compensate Ms. Heagy at the agreed upon rate of $21.00 violates the Wage Payment and Collections Law.

95.   Further, Ms. Heagy has informed MHS of its violation of the Wage Payment and Collections Law due to its failure to compensate her at the appropriate rate, yet MHS has knowingly failed to take corrective action.

96.   MHS's knowing, continued violation of the Wage Payment and Collections Law entitles Ms. Heagy to liquidated damages.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff, Margaret A. Heagy, respectfully requests this Honorable Court to enter judgment in her favor and against Defendant, Milton Hershey School for damages in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS, plus interest and costs of suit, as well as the following:

a.   Exercise jurisdiction over this matter;

15

b. Order Defendant to reimburse Plaintiff for all salary payments and/or benefits lost by her as a result of Defendant's action, including but not limited to front pay, back pay, and compensatory damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff liquidated damages;

e. Grant Plaintiff all costs of this action, including reasonable attorney fees incurred by Plaintiff; and

f. Grant Plaintiff such other and further relief as this Court deems just, proper and equitable.

Respectfully submitted,

Peggy M. Morcom, Esquire
Atty. ID No.: 92463
Melissa L. Kelso, Esquire
Atty. ID No.: 306793
Reilly Wolfson
1601 Cornwall Road
Lebanon, PA 17042-7406
(717)273-3733
pmorcom@reillywolfson.com
mkelso@reillywolfson.com
Counsel for Plaintiff

Date: 11/12/15

16

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  **Margaret Heagy**
**1518 King Street**
**Lebanon, PA 17042**

From:  **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

[ ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2014-03544** | **Legal Unit,**<br>**Legal Technician** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**District Director**

8/17/15
*(Date Mailed)*

cc:  **Renee M. Myers**
**Attorney at Law**
**ECKERT SEAMANS**
**213 Market Street, 8th Floor**
**Harrisburg, PA 17101**

**Peggy M. Morcom**
**Attorney at Law**
**REILLY, WOLFSON, SHEFFEY, SCRUM & LUNDBERG**
**1601 Cornwall Road**
**Lebanon, PA 17042**

EXHIBIT
A
ALL-STATE LEGAL®

## **VERIFICATION**

I verify that the statements made in the foregoing document are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsification to authorities.

_Margaret A. Heagy_
Margaret A. Heagy